IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT LOVENTHAL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| PENNCRO ASSOCIATES, INC., | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

NOW COMES the Plaintiff, ROBERT LOVENTHAL, by and through his attorneys, LARRY P. SMITH & ASSOCIATES, LTD., and for his complaint against the Defendant, PENNCRO ASSOCIATES, INC., Plaintiff states as follows:

### I.  PRELIMINARY STATEMENT

1.  This is an action for actual and statutory damages for violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. §1692, et seq.

### II.  JURISDICTION & VENUE

2.  Jurisdiction arises under the FDCPA, 15 U.S.C. §1692 et seq., and pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1337.

3.  Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

### III.  PARTIES

4.  ROBERT LOVENTHAL, (hereinafter, "Plaintiff") is an individual who was at all relevant times residing in the City of Chicago, County of Cook, State of Illinois.

5.  The debt that Plaintiff was allegedly obligated to pay was a debt allegedly owed by Plaintiff to HSBC.

1

6. The debt that Plaintiff was allegedly obligated to pay to HSBC was incurred for Plaintiff's personal use and/or for Plaintiff's household expenditure.

7. At all relevant times, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

8. PENNCRO ASSOCIATES, INC., (hereinafter, "Defendant") is a business entity engaged in the collection of debt within the State of Illinois. Defendant is incorporated in the State of Pennsylvania.

9. The principal purpose of Defendant's business is the collection of debts allegedly owed to third parties.

10. Defendant regularly collects, or attempts to collect, debts allegedly owed to third parties.

11. During the course of its efforts to collect debts allegedly owed to third parties, Defendant sends to alleged debtors bills, statements, and/or other correspondence via the mail and/or electronic mail and initiates contact with alleged debtors via various means of telecommunication, such as the telephone and facsimile.

12. At all relevant times, Defendant acted as a debt collector as that term is defined by 15 U.S.C. §1692a(6).

13. At all relevant times, Defendant acted through its duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## IV.    ALLEGATIONS

14. In or around March 2011 through June 2011, and on multiple occasions therein, Plaintiff and Defendant engaged in multiple communications relative to Defendant's attempts to collect a debt Plaintiff allegedly owed to HSBC.

15. On or about June 7, 2011, Defendant sent Plaintiff a correspondence in an attempt to collect a debt allegedly owed by Plaintiff to HSBC.

16. Plaintiff received the aforesaid correspondence.

17. In the aforesaid correspondence Defendant stated that it had been authorized by HSBC to accept a settlement relative to the debt Plaintiff allegedly owed to HSBC.

18. In the aforesaid correspondence, Defendant then listed the terms of the settlement that it was offering to Plaintiff.

19. One term of the settlement Defendant provided to Plaintiff required that Plaintiff make a payment to Defendant by June 20, 2011.

20. On or about June 16, 2011, subsequent to Plaintiff having received the aforesaid correspondence, Plaintiff engaged in a telephone conversation with Defendant.

21. During the course of the telephone call between Plaintiff and Defendant, the parties discussed the terms of the settlement that Defendant had provided to Plaintiff.

22. Plaintiff informed Defendant that he could only accept the settlement that Defendant had provided to Plaintiff if Defendant would allow him to make his first payment after June 20, 2011.

23. Plaintiff informed Defendant that he would not be able to make a payment on June 20, 2011 as he would not have sufficient funds in his account to make the first payment to Defendant on said date.

24. Plaintiff informed Defendant that he would have sufficient funds one (1) week after June 20, 2011 and that he could make his first payment to Defendant on June 27, 2011.

25. Plaintiff then offered to enter into a settlement with Defendant wherein his first payment to Defendant would be made on June 27, 2011, as opposed to on June 20, 2011 as Defendant had suggested in its previous correspondence to Plaintiff.

26. Defendant informed Plaintiff that it would allow him to make his first payment on June 27, 2011, but Defendant further stated that Plaintiff would still need to physically send a check to Defendant that would be received by it by June 20, 2011.

27. Plaintiff told Defendant that he would send Defendant a check by June 20, 2011, but that he would only do so if he could post-date the check to June 27, 2011, so that he could ensure that a payment would not be accepted by Defendant until June 27, 2011.

28. Defendant informed Plaintiff that it was acceptable for Plaintiff to do so and Defendant informed Plaintiff that he could send a post-dated check to Defendant.

29. Plaintiff then obtained reassurance from Defendant that it would not accept his payment until the date Plaintiff would list on the post-dated payment.

30. During the course of the aforesaid telephone call between Plaintiff and Defendant, by agreement Plaintiff was to send his first payment to Defendant would be post-dated to June 27, 2011.

31. During the course of the aforesaid telephone call, Defendant accepted the terms of the agreement, as delineated above.

32. Defendant's representations, as delineated above, had the effect of conveying to an unsophisticated consumer that Plaintiff could issue a post-dated check to Defendant under the

4

terms of the settlement agreement and that Defendant would not present Plaintiff's check for payment until the date on the post-dated check.

33. Defendant's representations, as delineated above, caused Plaintiff to believe that he could issue a post-dated check to Defendant under the terms of the settlement and that Defendant would not present his check for payment until the date on the post-dated check.

34. On June 16, 2011, subsequent to the aforesaid telephone conversations, Plaintiff sent Defendant a correspondence.

35. Due to Defendant's representations, as delineated above, Plaintiff enclosed in said correspondence to Defendant a post-dated payment.

36. Defendant received the aforesaid correspondence.

37. In the aforesaid correspondence Plaintiff stated, "[a]s discussed this afternoon enclosed herewith please find [a] check in the amount of $2,000.00 representing the June, 2011 payment…"

38. Plaintiff further stated "[p]lease note that the check is post-dated please deposit on the date stated."

39. Plaintiff enclosed in said correspondence a check to Defendant that was post-dated to June 27, 2011.

40. On or about June 21, 2011, Defendant presented for payment Plaintiff's check that was post-dated to June 27, 2011.

41. Defendant did not provide Plaintiff with written notification of its intent to deposit the aforementioned post-dated payment.

42. On or about June 21, 2011, Defendant deposited the post-dated payment prior to the date of payment that the parties had agreed upon.

5

43. On or about June 21, 2011, Defendant deposited the post-dated payment prior to the date of payment Plaintiff listed on the check provided to Defendant.

44. On June 21, 2011, despite Defendant's representations to Plaintiff that it would not deposit his post-dated payment earlier than the date on said payment, Defendant deposited Plaintiff's check that was post-dated to June 27, 2011.

45. Defendant's representations to Plaintiff that it would allow him to make his first payment on June 27, 2011, as opposed to June 20, 2011, were false, deceptive and/or misleading given that Defendant deposited Plaintiff's payment on June 20, 2011.

46. At the time Defendant deposited Plaintiff's payment, Plaintiff did not have sufficient funds in his account to pay Defendant.

47. As a result of Defendant depositing the payment on June 21, 2011, Plaintiff incurred service and/or administrative fees from his bank, Bank of America.

48. To date, Defendant has not paid Plaintiff for the service and/or administrative fees he incurred.

49. On or about June 21, 2011, Plaintiff discovered that Defendant had deposited his payment prior to the agreed upon date of payment.

50. In June 2011, on or subsequent to June 21, 2011, Plaintiff engaged in at least one (1) telephone call with Defendant wherein Plaintiff and Defendant discussed the terms of the settlement that had been entered into between the parties.

51. During the aforesaid telephone call(s), Plaintiff inquired why Defendant had deposited his payment on June 20, 2011, given that Defendant had informed Plaintiff it would not deposit his check before the date of Plaintiff's post-dated payment.

52. Defendant, on multiple occasions, during the aforesaid telephone call(s), informed Plaintiff that Defendant had never represented to Plaintiff that he could send in a post-dated payment to Defendant.

53. Defendant, on multiple occasions, during the aforesaid telephone call(s), informed Plaintiff that Defendant had never represented to Plaintiff that he could make a payment on June 27, 2011.

54. Defendant, on multiple occasions, during the aforesaid telephone call(s), denied having entered into an agreement with Plaintiff wherein he could issue a post-dated payment to Defendant and that Defendant would wait until the date on said payment to deposit it.

55. Defendant, by denying that it had previously entered into a settlement agreement with Plaintiff wherein he could make a post-dated payment to Defendant, made representations that were false, deceptive and/or misleading given that on or about June 16, 2011, Plaintiff and Defendant had entered in a settlement agreement allowing for Plaintiff to make a post-dated payment to Defendant.

56. In its attempts to collect the debt allegedly owed by Plaintiff to HSBC, Defendant violated the FDCPA, 15 U.S.C. §1692, in one or more of the following ways:

   a. Used false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect an alleged debt in violation of 15 U.S.C. §1692e;

   b. Used any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning the consumer in violation of 15 U.S.C. §1692e(10);

   c. Used unfair and/or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. §1692f.

   d. Accepted a payment postdated by more than five days and failed to notify Plaintiff in writing of its intent to deposit said payment not more than ten nor less than three business days prior to such deposit in violation of 15 U.S.C. §1692f(2);

  e. Deposited or threatened to deposit a postdated check or other postdated payment instrument prior to the date on such check or instrument in violation of 15 U.S.C. §1692f(4); and,

  f. Was otherwise deceptive and failed to comply with the provisions of the FDCPA.

57. As a result of Defendant's violations as aforesaid, Plaintiff has suffered, and continues to suffer, personal humiliation, embarrassment, mental anguish and emotional distress.

### V.   JURY DEMAND

58. Plaintiff hereby demands a trial by jury on all issues so triable.

### VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff, ROBERT LOVENTHAL, by and through his attorneys, respectfully prays for judgment as follows:

  a. All actual compensatory damages suffered;

  b. Statutory damages of $1,000.00;

  c. Plaintiff's attorneys' fees and costs;

  d. Any other relief deemed appropriate by this Honorable Court.

Respectfully submitted,
**ROBERT LOVENTHAL**

By:  s/ David M. Marco
   Attorney for Plaintiff

Dated: August 22, 2011

David M. Marco (Atty. No.: 6273315)
LARRY P. SMITH & ASSOCIATES, LTD.
205 North Michigan Avenue, 40th Floor
Chicago, IL 60601
Telephone: (312) 546-6539
Facsimile: (888) 418-1277
E-Mail: dmarco@smithlaw.us